UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EDUARDO JAIME,

                    Petitioner,

          vs.

JAMES E. TILTON, Secretary, California
Department of Corrections and
Rehabilitation,[1]

                    Respondent.

No. 2:05-cv-00933-JKS (HC)

MEMORANDUM DECISION

Petitioner Eduardo Jaime has filed a petition for habeas corpus under 28 U.S.C. § 2254. Petitioner is currently serving a term of 33 years to life, with the possibility of parole, in the custody of the California Department of Corrections and Rehabilitation.

STATE COURT PROCEEDINGS

On March 29, 2001, after a jury trial, Petitioner was convicted of two counts of second degree murder (Cal. Pen. Code § 187(a)); two counts of gross vehicular manslaughter while intoxicated (Cal. Pen. Code § 191.5); driving with blood-alcohol count of .08 percent or above with a prior and causing injury to multiple victims (Cal. Veh. Code §§ 23153(b), 23558); driving under the influence of alcohol with a prior and causing injury to multiple victims (Cal. Veh. Code §§ 23153(a), 23558); and driving with a suspended license, a misdemeanor (Cal. Veh. Code § 14601.2(a)).

On June 1, 2001, the court pronounced judgment and sentenced Petitioner to consecutive terms of 15 years to life imprisonment on the two murder convictions, plus a consecutive, upper determinate term of three years imprisonment on the driving under the influence of alcohol with a prior conviction and causing injury to multiple victims, and a 120-day concurrent sentence for

---

[1] James E. Tilton, Secretary, California Department of Corrections and Rehabilitation, substituted for Jeanne Woodford, Director, CDC.  Fed. R. Civ. P. 25(c).

driving on a suspended license.  Sentences on the other counts were stayed  under Cal. Pen. Code § 654.

Petitioner, represented by counsel, timely appealed the conviction and sentence to the California Court of Appeal, which affirmed the conviction and sentence in an unpublished written decision on December 13, 2002.  Petitioner timely filed a petition for review in the California Supreme Court, which summarily denied the petition without comment or citation to authority on February19, 2003.

On January 2, 2004, appearing *pro se*, Petitioner filed a petition for writ of habeas corpus in the Yolo County Superior Court, which was denied on the same date.[2]  On January 20, 2004, Petitioner filed a *pro se* petition for writ of habeas corpus in the California Court of Appeal, which summarily denied the petition without comment or citation to authority on June 24, 2004.  On July 29, 2004, Petitioner, again appearing *pro se*, filed a petition for writ of habeas corpus in the California Supreme Court, which he supplemented on August 24, 2004.  On August 10, 2005, the California Supreme Court summarily denied the petition without comment or citation to authority.

FACTS [3]

On November 6, 1999, Petitioner took his mother's GMC pickup truck without permission and, on a suspended license, drove his two cousins and a friend to the fairgrounds where a wedding reception and another party were being held. Petitioner claimed he drank an unknown number of beers and a few mixed drinks over two to three hours at the wedding reception.  When the foursome left the fairgrounds planning to go somewhere to eat, Petitioner drove the pickup.

In an area posted 40 miles per hour, Petitioner drove the pickup at 80 to 90 miles per hour, rounded a corner squealing the tires, slid into oncoming traffic and hit a Ford Escort.  The Escort flipped up into the air and landed on the driver's side, killing the driver and a passenger and injuring another passenger.  The pickup flipped over onto its roof, injuring everyone in the pickup.  The odor of alcohol emanated from the pickup and a few beer cans or bottles were found nearby.

The injured passenger of the Escort testified that her sister was sitting in the backseat and that she was sitting in the front seat next to her mother who was driving

---

[2] The state court record shows that the petition was received by the Yolo County Superior Court on December 15, 2003.

[3] The Statement of Facts is taken from the Court of Appeal's unpublished opinion in Case No. C038555.

at about five to ten miles per hour.  As the pickup came towards them in their lane, she told her mother to step on the brake and pull over to the curb.  Her mother did.  The pickup did not attempt to avoid hitting the Escort.

Three and a half hours after the collision, Petitioner's blood-alcohol content was .13 percent.  An expert, estimated Petitioner's blood-alcohol content at the time of the collision to have been between .16 and .20 percent.  According to the expert, a blood-alcohol content of .08 percent impairs vision.  A blood-alcohol content of .15 percent results in a loss of peripheral vision, lengthens the time for the eyes to adjust to glare and an average person's reaction time is seven times longer than when sober resulting in a greater likelihood of being involved in a car accident at night.

In October 1997, Petitioner was convicted of being a minor under 21 years of age driving a vehicle with a blood-alcohol content of .05 percent or more (Veh. Code, § 23140) and placed on probation which required Petitioner to complete an alcohol education course.  Petitioner completed the alcohol program.  In July 1999, Petitioner was convicted of driving a vehicle with a blood-alcohol content of .08 percent or more (Cal. Veh. Code, § 23152(b)) and placed on probation which required Petitioner to complete an alcohol education course.  The court suspended Petitioner's driver's license for one year.  Petitioner attended the alcohol program.  The program taught the following; drinking affects judgment, reasoning, reaction time, ability to self-evaluate and peripheral vision; a person under the influence of one drink might be overconfident, careless and misjudge road conditions; a person under the influence of eight drinks had a reaction time six times longer than when sober and would commit maneuvering errors; drinking increases the probability of being in an accident and killing someone; a person with a blood-alcohol content of .20 percent was 65 times more likely to be involved in an accident; how to avoid committing another driving under the influence offense and to know when one is impaired; and the concept of designated drivers and other alternatives to driving under the influence.

A defense accident reconstruction expert estimated Petitioner's speed at the point of impact at 71 miles per hour.  Petitioner testified that he felt a buzz but thought he could drive.  He asked the others whether he should drive.  They said he should.  Petitioner never believed he would get in an accident.  He did not recall the collision or the moments before it happened.  He had not thought in advance whether he might drink nor had he thought about the consequences of driving after drinking.

The parties stipulated that the bodily injury allegations had been proved.

## ISSUES BEFORE THIS COURT/STANDARD OF REVIEW

On May 12, 2005, Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus now pending before this Court.  In his petition, Petitioner raises nine grounds.

Ground 1:  Exclusion of testimony regarding the correlation between the driving under the influence arrests and traffic fatalities in Yolo County violated Petitioner's Sixth Amendment right to counsel and confrontation of witnesses and his due process rights under the Fifth and Fourteenth Amendments.

Ground 2:  Petitioner's right to due process under the Fifth and Fourteenth Amendments was violated by the use of a jury instruction that created an irrational permissive inference.

Ground 3:  Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments when trial counsel conceded the elements of gross vehicular manslaughter, thereby unwittingly conceding Petitioner's guilt of second degree murder.

Ground 4:  Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments when trial counsel failed to present evidence of Petitioner's subnormal intelligence and learning disabilities.

Ground 5:  Petitioner was denied his rights under the Fifth, Sixth, and Fourteenth Amendments  by the failure of the trial court to define the *mens rea* element of implied malice murder for a voluntarily intoxicated defendant.

Ground 6:  Petitioner was denied his rights under the Fifth and Fourteenth Amendments by a jury instruction that defined implied-malice for a murder conviction that bore little resemblance to the statute and failed to properly define the elements of that crime.

Ground 7:  Petitioner's Fourteenth Amendment right to effective appellate counsel was violated when appellate counsel failed to raise grounds 1, 2, 5, and 6 on appeal.

Ground 8:  Petitioner's right to effective assistance of counsel under the Sixth and Fourteenth Amendments was violated when trial counsel failed to raise grounds 1, 2, 5, and 6 before the trial court.

Ground 9:  Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments were violated by the cumulative effect of the preceding eight grounds.

On direct review Petitioner raised two issues: (1) insufficiency of the evidence to support his murder convictions and (2) the court erred in refusing to give CALJIC 4.21.1.  The second issue raised on direct appeal is also raised as part of his second, fifth and sixth grounds before this Court. In his petition for habeas corpus before the Yolo County Superior Court, Petitioner raised seven

MEMORANDUM DECISION
*Jaime v. Tilton*, 2:05-cv-00933-JKS                              4

grounds: (1) ineffective assistance of counsel for failure to present evidence of Petitioner's subnormal intelligence and learning disabilities; (2) exclusion of the evidence of the correlation between the driving under the influence arrests and traffic fatalities in Yolo County and ineffective assistance of counsel in incompetently proffering the evidence; (3) the use of a jury instruction that created an irrational permissive inference and ineffective assistance of appellate counsel for failure to raise the issue on appeal; (4) denial of effective assistance of counsel when trial counsel conceded the elements of gross vehicular manslaughter, thereby unwittingly conceding Petitioner's guilt of second degree murder; (5) the failure of the trial court to define the *mens rea* element of implied malice murder for a voluntarily intoxicated defendant; (6) use of jury instruction that defined implied-malice for a murder conviction that bore little resemblance to the statute and failed to properly define the elements of that crime violated due process; and (7) cumulative error. Petitioner raised the same issues in his subsequent petitions to the California Court of Appeal and California Supreme Court.

Respondent concedes that the petition filed in this Court is timely and, with the denial of the habeas corpus petition by the California Supreme Court, all issues presented in the petition to this Court have been exhausted.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the California courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor,* 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard). In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004), which in this case was that of the California Court of Appeal on direct review and California Superior Court, Yolo County, on the state habeas proceedings. In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam). When there has been no ruling on the merits, the AEDPA § 2254(d) standard of review does not apply. *Barker v. Fleming*, 423 F.3d 1085, 1092 (9th Cir. 2005). Consequently, this court must, of necessity, review the issues raised *de novo*.

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted.)

DISCUSSION

Petitioner's challenge to his conviction presents issues in three groups: (1) exclusion of evidence (Ground 1); (2) jury instructions (Grounds 2, 5, and 6); and (3) ineffectiveness of counsel (Grounds 1, 2, 3, 4, 5, 6, 7, and 8).

A.  **Exclusion of Evidence (Ground 1)**.

Petitioner argues that the trial court erred by excluding evidence regarding the correlation between driving under the influence arrests and traffic fatalities in Yolo County. Petitioner raised that claim in his state habeas petitions. The Yolo County Superior Court declined to address the merits of Petitioner's claim on the basis that the issue could have been raised on the direct appeal but was not, citing *In re Harris*, 5 Cal.4th 813, 834 [855 P.2d 391, 398 (1993)]; *In re Walker*, 10 Cal.3d 764, 773 [518 P.2d 1129, 1134 (1974)]; and *In re Dixon*, 41 Cal.2d 756, 759 [264 P.2d 513, 514 (1953)]. Petitioner also argued that trial counsel was ineffective in his proffer of the evidence to the trial court and appellate counsel was ineffective for failure to raise the issue on direct appeal, neither of which the Yolo County Superior Court addressed.

Respondent has not asserted adequate and independent state law grounds as an affirmative defense. Accordingly, it is deemed waived. *See Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003) ("Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner."). Moreover, to address the ineffective assistance of counsel claim the Court must first determine whether the California trial court erred in excluding the evidence. *See Jie Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004) (holding that the court "must consider the underlying merits of the case to come to a tentative conclusion as to whether [a petitioner's] claim, if properly presented, would be viable," notwithstanding the alleged ineffective assistance of counsel).

It is well settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense. However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 409–10 (1988). States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). However, this right is abridged by rules of evidence that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes the rules are designed to serve. *Id.* "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff,* 518 U.S. 37, 42-43, (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion). In considering whether the exclusion of evidence violates due process, this Court must consider the probative value of the evidence on the central issue. *United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007). Finally, assuming exclusion was error, it is subject to a harmless-error analysis. *Neder v. United States*, 527 U.S. 1, 18 (1999).

The evidence of the correlation between the number of driving under the influence arrests and number of related fatalities in Yolo County was offered with respect to the implied-malice element of second degree murder. The trial court excluded the evidence on the basis that, unless that

evidence were known to Petitioner, the statistical data was irrelevant to whether Petitioner was driving under the influence of alcohol with knowledge of the danger to, and with conscious disregard for, human life.  The trial court also rejected Petitioner's argument that the statistical data could be used to impeach prosecution witnesses who would testify as to what was taught at alcohol education courses, *i.e.*, that they may exaggerate the danger of causing a death; again on the basis that even if that information was erroneous, it was the information that Petitioner received and formed the basis for his knowledge of the danger posed by driving under the influence that was at issue.

Although not directly addressing the issue, the decision of the California Court of Appeal on the sufficiency of the evidence to support Petitioner's conviction is relevant to an analysis of the probative value of the excluded statistical data.

> Defendant contends the evidence is insufficient to support his two murder convictions, claiming there was a failure of proof on the element of malice. He argues the evidence was undisputed that he did not think about who would drive after the party and did not choose to drive while under the influence until after his companions assured him that he was capable of driving. Relying on the dissenting opinion in *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*), he argues as a matter of law, a drunk driver's state of mind is inconsistent with the state of mind required for murder, that is, malice or a conscious disregard for life. We conclude sufficient evidence supports both murder convictions.

> When "a criminal conviction [is] challenged as lacking evidentiary support [, we] must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *People* v. *Staten* (2000) 24 Cal.4th 434, 460.)

> The trial court instructed the jury that for second degree murder, the prosecution must prove that "[a] human being was killed[,] [t]he killing was unlawful[,] and [that] [t]he killing was done with malice aforethought." (CALJIC No. 8.10.)  The trial court further instructed, "Malice, may be either express or implied.  Malice is express when there is manifested intention unlawfully to kill a human being.  [¶]  Malice is implied when: one, the killing resulted from an intentional act, two, the natural consequences of the act [are] dangerous to human life, and three, the act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.  [¶]  When it is shown that a killing resulted from the intentional doing of an act with express or [i]mplied [m]alice, no other mental state need to be shown to establish the mental state of [m]alice

aforethought.   [¶ ] The mental state constituting [m]alice aforethought does not necessarily require any ill will or hatred of the person he killed.   The word aforethought does not imply deliberation or the lapse of considerable time.   It only means that the required mental state must precede rather than follow the act." (CALJIC No. 8.11.)

The court further instructed in the language of CALJIC No. 8.31 as follows: "Murder of the second degree based on a theory of [i]mplied [m]alice is the unlawful killing of [a] human being when, one, the killing resulted from an intentional act. Two, the natural consequences of the act are dangerous to human life, and three, the act was deliberately performed with knowledge of the danger to, and with conscious disregard for human life. [¶] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being."

Based on *People v. Whitfield* (1994) 7 Cal.4th 437, the trial court further instructed:   "The [i]ntentional act required for [i]mplied [m]alice underlying vehi[cle] murder is not the traffic infraction, which may precede a collision, but whether the defendant was driving under the influence with a conscious disregard for human life."

The court also instructed, "Evidence that a person voluntarily commences, and thereafter continues to consume alcoholic beverages to the point of intoxication, knowing from the outset that he must thereafter operate a motor vehicle, may be considered by you as evidence that demonstrates a conscious and deliberate disregard for human life."

In *Watson*, the defendant was charged with both second degree murder and vehicular manslaughter.  After a preliminary hearing, the magistrate refused to hold the defendant to answer for second degree murder, finding the evidence insufficient on the element of implied malice.  The prosecutor filed an information which included the rejected murder counts.  The trial court granted the defendant's motion to dismiss the murder counts and the People appealed.  The defendant argued that the facts showed at most gross negligence which supported vehicular manslaughter. *Watson* concluded the facts also supported an implied malice finding to justify the murder counts and reversed the judgment of dismissal. (30 Cal.3d at pp. 293-294, 301.)

The facts were these.  The defendant drank a large quantity of beer at a bar from late night to the early morning.  He drove his vehicle through a red light and skidded to avoid a collision in the middle of the intersection.  He continued to speed down the road posted at 35 miles per hour and at another intersection skidded into a car.  The three passengers were ejected from the car; two died.  The defendant's speed was estimated to be 84 miles per hour and at impact, about 70 miles per hour. An eyewitness estimated the defendant's speed at 50 to 60 miles per hour before impact and thought the defendant had the green light.   One-half hour after the

collision, the defendant's blood-alcohol content was .23 percent. (*Id*. at pp. 293 - 294)

  *Watson* determined that based on the legislative history of the vehicular manslaughter statute, there was no intent to preclude a murder charge and because the "degrees of awareness" differed, "the more specific vehicular manslaughter statute does not preclude application of the more general murder statute." (30 Cal.3d at pp. 294-295.)   Applied to the facts before it, *Watson* found there was probable cause to hold the defendant to answer for the second degree murder counts. (*Id*. at pp. 300- 301.)  The defendant drank until he was intoxicated, drove to the bar where he drank, and must have known that he would drive later.  The court presumed that the defendant knew of the consequences of driving while drunk.  He thereafter drove at "highly excessive speeds" on city streets which in itself was an act of great risk, almost hit one car having run a red light and then continued at an excessive speed into another intersection where he hit the victim's car, skidding before and after impact which suggested an actual awareness of the risk.  *Watson* determined that the facts supported a conclusion that the "defendant acted wantonly and with a conscious disregard for human life." (*Id*. at pp. 300-301.)

  Defendant initially argues that his murder convictions were precluded under *Watson* because "the evidence was undisputed that there were a number of potential drivers in [defendant's] party, and that [defendant] did not undertake to drive while drunk until after he had declined to drive, after which point his companions assured him he was fit to drive."

  As defendant recognizes, *Watson* does not require solo driving for a murder conviction and that the distinguishing facts were questions for the jury. In the alternative, defendant argues that Watson needs to be "clarified or reinterpreted" so that the facts here do not establish a second degree murder conviction, "as a matter of law."  For this proposition, defendant relies on the dissenting opinion in *Watson* which suggested the question should not be what was the defendant's state of mind when he drove to the bar and began to drink but rather what was the defendant's state of mind when the accident occurred.  (30 Cal.3d at p. 305.)  He claims that the *Watson* majority's interpretation allowing for a separation in time between the act and the mental state violates his right to due process.

  Defendant suggests that because of his state of intoxication, he thought that he was fit to drive, a typical belief held by drunk drivers due to distorted judgment which was the state of mind that leads to the fatal collision which is inconsistent with that state of mind required for a murder conviction, a conscious disregard for life.

  *Watson* has been the law for some time and requires a case-by-case approach in analyzing whether sufficient evidence supports a second degree murder conviction for death caused by an intoxicated driver.  (See *People v. Autry* (1995) 37 Cal.App.4th 351, 355-357, 358-359 [defendant who had four prior drunk driving convictions and attended a residential alcoholism program, drove with a blood-

alcohol content of .22 percent on the freeway at speeds of 70 to 85 miles per hour, went into the median strip and hit and killed two highway construction workers and injured his passengers and court found sufficient evidence of implied malice]; *People v. McCarnes* (1986) 179 Cal .App.3d 525, 527-528, 533, 534-535 [defendant drove with .27 blood-alcohol content, had four prior drunk driving convictions, had repeatedly gone to alcohol programs, drove at more than 65 miles per hour in a posted 55 mile per hour zone in the opposite lane, killed two people and injured four more people and court found sufficient evidence of implied malice]; *People v. Albright* (1985) 173 Cal.App.3d 883, 884-885, 887 [driver drove with .17 blood-alcohol content, drove at 100 miles per hour in a residential area, passed three cars and hit the last one, killing the driver and court found sufficient evidence of implied malice]; *People* v. *Olivas* (1985) 172 Cal.App.3d 984, 986, 988-989 [defendant, under the influence of alcohol and PCP, drove at an excessive speed through the city, struck the fender of one car, nearly collided with two cars, evaded pursuing officers, collided with another car, killing an infant and injuring the driver, and court found sufficient evidence of implied malice].)  We are not free to disregard *Watson* (*Auto Equity Sales, Inc*. *v. Superior Court* (1962) 57 Cal.2d 450, 455) nor are we inclined to reinterpret it. We disagree with defendant's assertion that application of *Watson* results in a violation of his due process rights.

"[N]owhere does the opinion in *Watson* state that all of the factors present in that case are necessary to a finding of second degree murder." (*People v. Olivas, supra*, 172 Cal. App.3d at p. 988.)  Sufficient evidence supports defendant's second degree murder convictions.  Defendant had two prior drunk driving convictions and a suspended license.  He had attended alcohol education courses, completing one, where the risks of drinking and driving were taught.  Defendant took his mother's GMC pickup without her permission.  He drove his three companions to the fairgrounds to attend a wedding party where alcohol was served.  According to defendant, he drank an unknown number of beers and several mixed drinks in the span of a few hours.  His blood-alcohol content was estimated to be between .16 and .20 percent, at least twice the legal limit.

Although defendant testified that he felt able to drive, he also testified that he asked his friends whether he should drive.  His inconsistent statements could have been easily rejected by the jury.  One of defendant's companions heard someone say that defendant should drive because he was in the best shape compared to the rest of them.  If defendant heard it, this suggests defendant was aware that he was under the influence.  Another companion testified that defendant did not want to drive but did not testify why.  Moreover, this was inconsistent with defendant's claim that he felt able to drive.  Out of the four people in the truck, defendant was supposedly the least intoxicated so no one should have been driving.  Defendant's claim that any one of the others could have driven is simply unsupported by the evidence.  Defendant had the keys to the truck, presumably at all times, and the truck belonged to his mother.

He drove the truck despite having prior drunk driving convictions as well as a suspended license.

Defendant drove the truck at a speed between 71 and 90 miles per hour in a 40 mile per hour zone.  He drove on the wrong side of the road and having taken no evasive action, collided with a car killing two people and injuring another as well as injuring all passengers in his truck.

Defendant was not too intoxicated to know what he was doing when he got into his mother's truck with his companions and started to drive.  The evidence reflects that he knew he would have to drive when he started to drink and that his past drunk driving convictions and alcohol education courses allowed the jury to infer that he knew he would drink to excess and drive and that he knew the risks associated with the same. (See *People v. Ricardi* (1992) 9 Cal.App.4th 1427, 1434-1435.)  Sufficient evidence supports defendant's second degree murder convictions.

It is clear that the statistical data excluded in this case had little, if any, probative value as to the central issue of implied malice under California law.  Accordingly, its exclusion did not impinge upon the right of Petitioner to present evidence in his defense within the context of the Sixth Amendment.  In any event, the Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief  on his first ground.

B.  **Jury Instructions (Grounds 2, 5, and 6)**.

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California,* 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Francis v. Franklin*, 471 U.S. at 324 n. 9 (1985).  Due process and the Sixth Amendment to the Constitution require that a jury be

correctly instructed as to every element of the crime with which a defendant is charged and convicted. *See United States v. Gaudin*, 515 U.S. 506, 522–23 (1995).

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right and may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Estelle v. McGuire*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is construed very narrowly. *Id.*, 502 U.S. at 72–73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.*

Ground 2 (Irrational Instruction).    The Jury was instructed:  "Evidence that a person voluntarily commences, and thereafter continues to consume alcoholic beverages to the point of intoxication, knowing from the outset that he must thereafter operate a motor vehicle, may be considered by you as evidence that demonstrates a conscious and deliberate disregard for human life." Petitioner correctly states that a permissive inference requires a rational connection between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is more likely than not to flow from the former. *See County Court of Ulster County, N. Y. v. Allen*, 442 U.S. 140, 157 (1979). A permissive inference leaves the trier of fact free to credit or reject the inference and the party challenging it must demonstrate its invalidity as applied to him. *Id.*

Petitioner argues that, under the facts of this case, this instruction created an irrational permissive inference, *i.e.*, that there is no rational connection between the voluntary intoxication and knowledge that he must thereafter operate a motor vehicle and a finding of a conscious and deliberate disregard for human life. Petitioner's arguments are based upon two fallacious premises: (1) the jury had to accept the testimony favorable to Petitioner concerning the state of his intoxication and his state of mind; and (2) other than his testimony as to the amount he had to drink, there was no evidence that he was intoxicated.

As for evidence of Petitioner's level of intoxication, as the California Court of Appeal noted, the facts are otherwise.

> Three and a half hours after the collision, Petitioner's blood-alcohol content was .13 percent.  An expert, estimated Petitioner's blood-alcohol content at the time

of the collision to have been between .16 and .20 percent.  According to the expert, a blood-alcohol content of .08 percent impairs vision.  A blood-alcohol content of .15 percent results in a loss of peripheral vision, lengthens the time for the eyes to adjust to glare and an average person's reaction time is seven times longer than when sober resulting in a greater likelihood of being involved in a car accident at night.

As for the operation of the permissive inference, the California Court of Appeal, in finding the evidence was sufficient to support Petitioner's conviction of second degree murder, held:

> Defendant was not too intoxicated to know what he was doing when he got into his mother's truck with his companions and started to drive.  The evidence reflects that he knew he would have to drive when he started to drink and that his past drunk driving convictions and alcohol education courses allowed the jury to infer that he knew he would drink to excess and drive and that he knew the risks associated with the same. (See *People v. Ricardi* (1992) 9 Cal.App.4th 1427, 1434-1435.)

No Supreme Court decision has held that the permissive inference used in this case violated the *Ulster County* standards.  Based upon this record, the Court cannot find that the decisions of the California Court of Appeal or Yolo County Superior Court were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor, supra*; *see Lockyer v. Andrade, supra*.  Petitioner is not entitled to relief on his second ground.

Ground 5 (Failure to define *mens rea*).  Petitioner's argument appears to be focused on a premise that his specific or actual intent was an element of the second degree murder charge of which he was convicted.  The California Court of Appeal in rejecting this argument, held (footnote as in original):

> The trial court refused the defense-requested instruction on voluntary intoxication (CALJIC No. 4.21.1 [voluntary intoxication -- trial with general and specific intent crimes]) which provides :
>
> "It is the general rule that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of this condition.
>
> "Thus, in the crime [s] of _____ charged in Count [s] _____, [or the crime of _____ which is lesser thereto,] the fact that the defendant was voluntarily intoxicated is not a defense and does not relieve defendant of responsibility for the crime.  This rule applies in this case only to the crime[s] of _____[. ] [, and the lesser crime[s] of _____.]

"However, there is an exception to this general rule, namely, where a [specific intent] [or] [mental state] is an essential element of a crime. In that event, you should consider the defendant's voluntary intoxication in deciding whether the defendant possessed the required [specific intent] [or] [mental state] at the time of the commission of the alleged crime.

"Thus, in the crime[s] of _____, _____, _____ , charged in Count[s] _____, [or the lesser crime[sl of _____,] a necessary element is the existence in the mind of the defendant of [a] certain [specific intent[s] [or] [mental state [s] which is included in the definition of the crime[s] set forth elsewhere in these instructions.

"If the evidence shows that a defendant was intoxicated at the time of the alleged crime, you should consider that fact in deciding whether or not [the] defendant had the required [specific intent] [or] [mental state].

"If from all the evidence you have a reasonable doubt whether the defendant had that [specific intent] [or] [mental state], you must find that defendant did not have that [specific intent] [or] [mental state]."

Instead the court chose to instruct the jury in the language of CALJIC No. 4.20 [voluntary intoxication -- not a defense to general intent crimes] as follows :

"No act committed by a person while in the state of voluntary intoxication is less criminal by reason of that condition. [a] In the crimes charged, the fact the defendant was voluntarily intoxicated is not a defense and does not relieve him of responsibility for the crime."

Defendant contends the court's refusal to give CALJIC No. 4.21.1 constitutes reversible error. Although recognizing the issue was decided against him in *People v. Martin* (2000) 78 Cal.App.4th 1107, he argues [California Penal Code] section 22, as amended in 1995, to preclude evidence of voluntary intoxication to negate malice aforethought is unconstitutional and unenforceable, rendering the trial court's refusal to give CALJIC No. 4.21.1 prejudicia1 error. We find no error.

"A trial court must instruct the jury 'on the law applicable to each particular case.' [Citation.] '[E]ven in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.' [Citation.] Therefore, a claim that a court failed to properly instruct on the applicable principles of law is reviewed de novo. [Citation.] In conducting this review, we first ascertain the relevant law and then 'determine the meaning of the instructions in this regard.' [Citation.] [¶] The proper test for judging the adequacy of instructions is to decide whether the trial court 'fully and fairly instructed on the applicable law . . . .' [Citation.] '"In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given. [Citation]"' [Citation.] 'Instructions should be

interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]"  (*Martin, supra*, 78 Cal.App. 4th at pp. 1111-1112 . )

Section 22 formerly provided that a trier of fact could consider evidence of the defendant's voluntary intoxication on whether he harbored malice, either express or implied, aforethought. (*People v. Whitfield, supra,* 7 Cal.4th at pp. 441, 448-449.)  In 1995, apparently in reaction to *Whitfield*, section 22, subdivision (b) was amended to provide that evidence of the defendant's voluntary intoxication is admissible "solely on the issue of whether or not the defendant actually . . . harbored express malice aforethought."  (*People v. Martin, supra*, 78 Cal.App.4th at p. 1114.)  Based on the amendment of section 22, evidence of the defendant's voluntary intoxication is no 1onger admissible to negate implied malice aforethought.  (*Id*. at pp. 1114-1115.)

Defendant requests that this court adopt the views expressed in the dissenting opinions in *Montana v. Egelhoff* (1996) 518 U.S. 37 [135 L.Ed.2d 361], to wit, to preclude defendant from attacking the proof of an element of an offense, here, implied malice, violates his constitutional right to due process of law.  The *Egelhoff* plurality held that a defendant's right to have a jury consider evidence of voluntary intoxication on the mental state required for the offense was not a "fundamental principle of justice."  Thus, a state law precluding consideration of a defendant's voluntary intoxication on the mental state required did not violate due process. (*Id*. at pp. 39-43, 48-51, 56 [135 L.Ed.2d at pp. 366-368, 371-373, 376].)  In *Martin*, the defendant contended that the trial court prejudicially erred in instructing the jury in the language of CALJIC No. 4.20 rather than CALJIC No. 4.21 [voluntary intoxication -- when relevant to specific intent].[1]  *Martin* found section 22 constitutional and found no instructional error, relying on *Egelhoff* and the 1995 amendment to section 22. (78 Cal.App.4th at pp. 1110, 1113-1117.)

We find *Martin* persuasive.  No instructional error occurred here either. Defendant's reliance on old law and dissenting opinions is misplaced.

---

[1]  CALJIC No. 4.21, as requested in *Martin*, provided:

"'[¶] . . . [¶] If the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in deciding whether defendant had the required [specific intent] [mental state].

"'If from all the evidence you have a reasonable doubt whether the defendant formed that [specific intent] [mental state[s]] , you must find that [he] [she] did not have that [specific intent] [mental state[s]].'"  (*People v. Martin, supra,* 78 Cal.App.4th at p. 1112.)

---

The California Court of Appeal, First Appellate District, following *Martin* and applying *Egelhoff*, recently rejected an argument similar to that of Petitioner and upheld the validity of a

similar instruction that implemented California Penal Code Section 22.  *People v. Timms*, 60 Cal.Rptr. 3d 677 (Cal.App. 2007).

No Supreme Court decision has held that California Penal Code § 22 violates a fundamental Constitutional right.  Indeed, the decision of the California Court of Appeal was entirely consistent with the holding of the plurality in *Egelhoff* that due process does not prevent a state from disallowing consideration of voluntary intoxication when a defendant's state of mind is at issue.  518 U.S. at 56.  Based upon this record, the Court cannot find that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor, supra*; *see Lockyer v. Andrade, supra*.  Petitioner is not entitled to relief on his fifth ground.

Ground 6 (Due process violated by improper definition of implied-malice).  This claim was presented in Petitioner's habeas petition in the state courts and addressed, in part, by the Court of Appeal on direct review.  As with his first ground before this Court, the Yolo County Superior Court declined to address the merits of Petitioner's claim on the basis that the issue could have been raised on the direct appeal but was not, citing *In re Harris*, 5 Cal.4th 813, 834 [855 P.2d 391, 398 (1993)]; *In re Walker*, 10 Cal.3d 764, 773 [518 P.2d 1129, 1134 (1974)]; and *In re Dixon*, 41 Cal.2d 756, 759 [264 P.2d 513, 514 (1953)].  Also, as with the first ground, because Respondent has not asserted adequate independent state grounds as an affirmative defense and Petitioner has coupled a claim of ineffective assistance of counsel, this Court must address the matter on the merits.[4]  The gist of Petitioner's argument is that the statutes under which he was convicted, as defined in the instructions given in this case, do not properly reflect California law.  In particular, Petitioner focuses on the

---

[4] The Court notes that it does not appear from the record before this Court that Petitioner raised the issue of ineffective assistance of counsel claim as it relates to this issue before the state courts.  Consequently it is questionable whether that claim was exhausted.  However, Respondent has not, in this context, raised failure to exhaust as a defense.  Indeed, Respondent has affirmatively alleged, albeit apparently mistakenly, that Petitioner had the same issues pending before the California Supreme Court in his petition for habeas relief to that court, which has since been decided, exhausting Petitioner's state remedies.

definition of implied malice in California Penal Code § 188 [5] and its relationship to Penal Code § 191.5(a), (e).[6] Although Petitioner somewhat obliquely raises a Fourteenth Amendment due process claim, *i.e.*, statutes as defined and applied in this case are ambiguous and vague, he cites no authority nor does he make a cogent argument that there was a due process violation.

Taking snippets from various California decisions, frequently out of context, Petitioner attempts to weave a mosaic that "implied malice" under California law requires a actual subjective intent (*mala fide* motive), which CALJIC 2.40 negates.   Contrary to Petitioner's arguments, the California Court of Appeal, applying California law, specifically *Watson*, upheld the giving of CALJIC 2.40.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  It is also presumed that the state court knew and correctly applied state law.  *See Walton v. Arizona,* 497 U.S. 639, 653 (1990) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Estelle*

---

[5]  **§ 188. Malice, express malice, and implied malice defined**

Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

When it is shown that the killing resulted from the intentional doing of an act with express or implied malice as defined above, no other mental state need be shown to establish the mental state of malice aforethought. Neither an awareness of the obligation to act within the general body of laws regulating society nor acting despite such awareness is included within the definition of malice.

[6]  **§ 191.5 Gross vehicular manslaughter while intoxicated**

(a) Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence.

\* \* \* \*

(e) This section shall not be construed as prohibiting or precluding a charge of murder under Section 188 upon facts exhibiting wantonness and a conscious disregard for life to support a finding of implied malice, or upon facts showing malice consistent with the holding of the California Supreme Court in People v. Watson, 30 Cal. 3d 290

*v. McGuire*, 502 U.S. at 67-68 (a federal habeas court cannot reexamine a state court's interpretation and application of state law).  In this case, Petitioner has failed to overcome that presumption. Petitioner's sixth ground simply argues that the California court misapplied California law; it raises no issue of federal law or Constitutional right.  In any event, the Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the Petitioner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief on his sixth ground.

C. **Ineffective Assistance of Counsel (Grounds 3, 4, 7, and 8)**.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  *Strickland* and its progeny do not mandate this Court act as a "Monday morning quarterback" in reviewing tactical decisions.  Indeed, the Supreme Court admonished in *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted):

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745, 751–52 (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir.1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

Ground 3 (Concession by Trial Counsel). Petitioner argues that his right to effective counsel was abridged when trial counsel conceded the elements of gross vehicular manslaughter, which unwittingly conceded Petitioner's guilt of second degree murder. The Yolo County Superior Court rejected that claim, holding:

> In claim #4 petitioner argues that his attorney provided ineffective assistance in closing argument. In summary he asserts: (1) trial counsel conceded that the petitioner was guilty of gross vehicular manslaughter; (2) the mens rea for gross vehicular manslaughter is really the same as the mental state for implied malice second degree murder; so (3) in making this admission the trial lawyer "unwittingly" conceded that Jaime had the mental state required for second degree murder.

> Petitioner's argument is unpersuasive, because it is based on an erroneous premise. The mental state required for gross vehicular manslaughter is not the same as that necessary to be guilty of implied malice second-degree murder. The charge of vehicular manslaughter can only be found true if there is evidence of gross negligence. The charge of murder with implied malice necessitates a finding that a defendant performed an act with knowledge of the danger to, and with conscious disregard for, human life. The concept of gross negligence incorporates an objective test, while implied malice utilizes a different, subjective standard. This distinction was fully explained to the jury when the court read Special Instruction #1 (CT 213).

> Since there is a logical and fundamental difference between gross negligence and implied malice, defense counsel's comment in closing argument that the jury could find petitioner guilty of vehicular manslaughter was not an admission that Jaime was guilty of second-degree murder. As a review of the record demonstrates, trial counsel made a strategic decision to invite the jury to find Jaime guilty of the lesser charges, so that they would reject the murder charges. The fact that this strategy failed does not mean that counsel's performance fell below constitutional standards.

> A defense attorney's conduct in closing argument can only be the grounds for a writ of habeas corpus if his performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 688. The United States

Supreme Court has recently cautioned that it is difficult to determine that a defense attorney has not provided effective assistance in final argument:

> "Counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage... Judicial review of a defense attorney's summation is therefore highly deferential – and doubly deferential when it is conducted through the lens of federal habeas."

> Yarborough v. Gentry, 124 S.Ct. 1, 4

Trial counsel's tactics in closing argument were reasonable, given the nature of the evidence introduced at trial. The defense attorney was an experienced lawyer who did his best. The petitioner was not denied the effective assistance of counsel in final argument.

The critical issue on this ground is the interpretation and application of state law. As noted above, review of the application of state law is not an appropriate subject for habeas review in this Court. Under that analysis, the Court must conclude that, even if counsel erred, that error did not rise to the level of incompetence or have the prejudicial effect of sufficient magnitude to satisfy the *Strickland-Hill* test. In any event, the Court cannot say that the decision of the Yolo County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the Yolo County Superior Court unreasonably applied the correct legal principle to the facts of the Petitioner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief on his third ground.

Ground 4 (Failure to Present Evidence of Petitioner's Subnormal Intelligence/Learning Disabilities). Petitioner argues that trial counsel was deficient in failing to fully investigate and present evidence that Petitioner was of subnormal intelligence and had learning disabilities. The Yolo County Superior Court in rejecting Petitioner's argument held:

> The final claim is that defense counsel provided ineffective assistance, counsel failed to determine whether Jaime suffered from intellectual or learning deficits. Petitioner argues that if his attorney had undertaken such an evaluation, he would have learned that Jaime has a low IQ and a serious learning disability. Petitioner reasons that such evidence would have been relevant to show that he did not or could

not understand the information presented in the two DUI classes attended by him, and therefore did not harbor the mens rea required for second-degree murder.

There is no question that trial counsel has a responsibility to undertake any reasonable investigation which might uncover evidence material to the criminal charges. The threshold question in this matter is whether an evaluation of the petitioner to establish his IQ and his learning ability was reasonable. Petitioner states that his intellectual limitations would have been obvious to even the most casual observer. One can only question that assertion in light of his testimony before the jury. Jaime was on the witness stand for almost two hours, and yet he never stuttered and never claimed that he did not understand the subject matter taught in the DUI courses.

Assuming arguendo that the defense attorney should have hired an expert to conduct a psychological evaluation, there is a second issue which is never discussed in the Petition: prejudice. Even if a showing is made that trial counsel's performance was deficient, a criminal defendant cannot obtain relief on an ineffective assistance claim unless he can affirmatively show that he has been prejudiced by the lawyers [*sic*] conduct. Strickland v. Washington, 466 U.S. 668,691-692. People v. Ledesma, 43 Cal.3d 171, 217.

In order to evaluate the significance of this "missing" evidence, it is necessary to review what the petitioner himself said about his DUI classes. He testified that he had attended these classes in 1998 and in 1999. He stated that he remembered information about the 1998 class, but he could not remember details from the lectures in the 1999 class. However, there were three important principles that he had learned: (1) people who drink have problems evaluating their ability to drive safely; (2) a person is not supposed to drink and drive; and (3) drunk driving could result in injury to others.

This testimony demonstrates that, even if petitioner had intellectual and learning disabilities which limited his ability to understand the subject matter taught in the two DUI classes, he still came away from the classes with a knowledge of the fundamental lessons presented. He knew that a person who ingested alcohol should not thereafter drive a motor vehicle, because this behavior could result in injury to other human beings. In other words, he had knowledge of the danger to human life if he chose to drink and then drive an automobile.

Petitioner's own testimony established this element of implied-malice murder. The introduction of the proffered psychological assessment evidence would not have negated this conclusion. Consequently, it cannot be said that any failure to assess the petitioner prejudiced his case.

This Court, as did the Yolo County Superior Court, must conclude that, even if counsel erred, that error did not rise to the level of incompetence or have the prejudicial effect of sufficient magnitude to satisfy the *Strickland-Hill* test. The Court cannot say that the decision of the Yolo

County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the Yolo County Superior Court unreasonably applied the correct legal principle to the facts of the Petitioner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief on his fourth ground.

       Grounds 7 and 8 (Ineffective Assistance of Counsel for Failure to Raise Grounds 1, 2, 5, and 6). In as much as Petitioner is not entitled to relief on Grounds 1, 2, 5, and 6 on the merits, even if counsel erred, those errors did not rise to the level of incompetence or have the prejudicial effect of sufficient magnitude to satisfy the *Strickland-Hill* test. Petitioner is not entitled to relief under the seventh and eighth grounds.

       Accordingly, because Petitioner is not entitled to relief under any ground asserted, the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

       **IT IS ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)). All federal constitutional issues properly raised in the petition were either addressed by the California Court of Appeal in its decision or addressed by the Yolo County Superior Court in denying Petitioner's petition for habeas relief before that court and no reasonable jurist could find that those decisions were "objectively unreasonable."

       The Clerk of the Court shall enter final judgment accordingly.

       Dated:  November 30, 2007.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge
